IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 18-10189 (CSS) |
| PATRIOT NATIONAL, INC., *et al.*, | : | Jointly Administered |
| | : | |
| Debtors. | : | |
| | : | |
| _____ | : | |
| HONORABLE TRINIDAD NAVARRO, | : | |
| INSURANCE COMMISSIONER OF THE STATE | : | |
| OF DELAWARE, in his capacity as RECEIVER | : | |
| OF ULLICO CASUALTY COMPANY IN | : | |
| LIQUIDATION, | : | |
| | : | |
| Appellant, | : | Civ. No. 18-751 (RGA) |
| v. | : | |
| | : | |
| PATRIOT NATIONAL, INC. and CERBERUS | : | |
| BUSINESS FINANCE, LLC, | : | |
| | : | |
| Appellees. | : | |

## **MEMORANDUM OPINION**

Neil B. Glassman, GianClaudio Finizio, Sophie E. Macon, Bayard, P.A., Wilmington, Delaware, attorneys for the Appellant.

Adam G. Landis, Landis Rath & Cobb LLP, Wilmington, Delaware; Michael L. Cook, Adam C. Harris, William H. Gussman, Jr., Schulte Roth & Zabel LLP, New York, New York; attorneys for Appellees Guardia, LLC and Cerberus Business Finance, LLC.

September 30, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

This matter involves two insolvency estates – one bankruptcy and one insurance – in two different forums.  The appeal has been filed in the bankruptcy cases of Patriot National, Inc. ("PNI") and certain affiliates ("Debtors") by the Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, in his capacity as receiver ("Receiver") of Ullico Casualty Company.  The Ullico estate was created on May 30, 2013 when the Court of Chancery of the State of Delaware entered its Liquidation and Injunction Order with Bar Date ("Liquidation Order") pursuant to the Delaware Uniform Insurers Liquidation Act, 18 Del. C. § 5901–5944 ("DUILA").[1]  The Debtors' bankruptcy estate was created years later upon the filing of their chapter 11 petitions on January 30, 2018.  Under the authority of the Liquidation Order, which requires the Receiver to marshal and recover assets and administer Ullico's estate for the benefit of creditors, the Receiver filed a petition to compel accounting and turnover of collateral from non-debtor Patriot Underwriters, Inc. n/k/a Guarantee Underwriters, Inc. ("GUI") on March 13, 2015.[2]  The parties dispute whether a proper accounting was provided, and the Receiver sought to preserve his rights in connection with the Debtors' plan.

The Receiver objected to confirmation on the basis that the proposed plan would impair his rights under DUILA and the Liquidation Order in violation of the McCarran-Ferguson Act,[3]

---

[1] The docket of the Chapter 11 cases, captioned *In re Patriot National, Inc.*, No. 18-10189-CSS (Bankr. D. Del.), is cited herein as "B.D.I. __."  The appendix (D.I. 26-31) filed in support of the Receiver's opening brief is cited herein as "A__." "Appellees" are Guardia LLC, the reorganized Debtor, as successor to PNI, and secured lender Cerberus Business Finance, LLC.

[2] Although the Petition was commenced against a non-Debtor affiliated entity, the scope of the accounting relates to the entire Ullico/Patriot Program (defined below) for which the Debtors produced bank records including the Patriot/Ullico Account (defined below).  (D.I. 38 at 5 n.2).

[3] The McCarran-Ferguson Act provides, in relevant part: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the

that abstention was required under various statutes and doctrines,[4] and that the plan was not proposed in good faith in accordance with § 1129(a)(3) of the Bankruptcy Code. The Receiver further objected to a provision contained in the proposed plan which provided that the Bankruptcy Court would have "exclusive jurisdiction" to adjudicate claims and litigation "arising out of, and related to, the Chapter 11 Cases and the Plan." (D.I. 1-1, Art. X).

At the April 24, 2018 confirmation hearing, the Bankruptcy Court issued a bench ruling determining that the McCarran-Ferguson Act did not apply and that abstention was not warranted. (A1065-68). Following supplemental briefing on the retention of exclusive jurisdiction provision, on May 2, 2018, the Court entered a separate order (D.I. 1-2) ("Jurisdiction Order"), which determined that the Bankruptcy Court's retention of exclusive jurisdiction provision "does not, at the moment, prejudice any party" and ordered that the Confirmation Order contain language making it subject to objection by any party which believes its rights are being infringed upon. Thereafter, on May 4, 2018, the Court entered an order confirming the Debtors' plan (D.I. 1-1) ("Confirmation Order"). The Receiver has appealed the Confirmation Order and Jurisdiction Order on the basis that they unlawfully impede and interfere with his rights under the Liquidation Order and DUILA. For the reasons set forth below, the Court will affirm both orders.

---

business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). "Congress carved out insurance companies from the purview of federal bankruptcy law. As a result, the states have primary responsibility for regulating insurance, including insurance company insolvency proceedings." *In re Freestone Ins. Co*., 143 A.3d 1234, 1242-43 (Del. Ch. 2016) (cleaned up).

[4] The Receiver asserted that the Bankruptcy Court was required to abstain, or should exercise its discretion to permissively abstain, from abrogating the Receiver's rights under 28 U.S.C. § 1334(c), as well as under the abstention doctrines set forth in *Younger v. Harris,* 401 U.S. 37 (1971) and in *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943).

I.    **BACKGROUND**

A.    **The Parties**

In 2009, insurance company Ullico entered into relationships with non-debtor Patriot

Underwriters, Inc., now known as GUI, to provide workers' compensation insurance through a

program marketed and operated by GUI (the "Ullico/Patriot Program"). GUI provided "turn-

key" insurance services to Ullico, which allowed its capital to be used to backstop losses from

covered workers compensation risk.  Virtually all other aspects of the insurance operation were

handled by the non-insurer service providers, including sales, marketing, management,

underwriting, policy issuance, administration, accounting, claims handling, premium collection

and disbursement, collateral collection and disbursement, and subrogation (collectively, the

"Ullico/Patriot Program Services").  (*See* A0233, 0278).  Numerous Ullico large-deductible

workers compensation insurance policies were issued through the Ullico/Patriot Program.

Pursuant to the "Large Deductible Endorsement" attached to the policies, Ullico was authorized

to advance part or all of the applicable deductible amounts, and the insured was required to

reimburse Ullico for payments made by the company that were within the deductible.  (*See*

A0339; A0368; A0380).  In order to secure repayment of the deductible and other payments

which became due from the insured to Ullico, the insured was required to provide collateral prior

to the issuance of the policy.  (A0380).  GUI entered into program agreements with Ullico

insureds that required the insureds to deposit collateral with GUI.  (A0385; A0406; A0428).

B.    **The Liquidation**

On May 30, 2013, the Court of Chancery entered the Liquidation Order placing Ullico

into liquidation pursuant to §§ 5905 and 5906 of DUILA.  The Receiver is vested with "all right,

title and interest in, of or to, all of the property of [Ullico]" (A0027-0030, ¶¶ 1-3 and 7); *see also*

18 Del. C. § 5913(b).  The Liquidation Order includes a number of provisions authorized by 18

Del. C. § 5904(b) to assist the Receiver in one of his core functions: to marshal the assets and possible assets of the estate.  The Liquidation Order prevents the dissipation of Ullico's assets or assets that it may have an interest in; requires the person or entity in possession of the assets to file an accounting of those assets with the Receiver; and mandates that all assets be turned over to the Receiver.  (A0031-0032 at ¶¶ 8–10).  Paragraph 9 of the Liquidation Order provides:

> 9. Except as otherwise indicated elsewhere in this Order or except as excluded by express written notice provided by the Receiver, all persons or entities holding Assets of, or on behalf of, ULLICO CASUALTY shall file with the Receiver within ten (10) calendar days of the entry of this Order an accounting of those Assets, regardless of whether such persons or entities dispute the Receiver's entitlement to such Assets.

(A0031 at ¶ 9).  The Liquidation Order prohibits all persons or entities from "exercising any right adverse to the right of ULLICO CASUALTY to or in the Assets, or in any way interfering with the Receiver, the Deputy Receiver(s), or the Designees either in their possession and control of the Assets or in the discharge of their duties hereunder."  (A0032 at ¶ 11).  Through the Liquidation Order, estate assets are marshaled for the purpose of administering them, including distributing assets consistent with DUILA and the Liquidation Order.  *See* DUILA § 5918.

## C.    The Petition to Compel Accounting and Turnover

Within months of Ullico being placed into liquidation, GUI and its affiliates began an operational restructuring which took place between 2013 and 2015.  The operational restructuring was purportedly designed to separate the insurance-risk-taking business ("Guaranty Silo") from the Debtors' non-risk-bearing insurance-services business ("Patriot Silo").  (*See* A0076 ¶ 18).  The restructuring is reflected in the 2013-2015 organization charts contained in the regulatory filings of Guaranty Insurance Company ("GIC") with the Florida Office of Insurance Regulation.  (A0227-0232).  The charts also reflect the restructuring of the Ullico/Patriot Service Providers from the Guaranty Silo to the Patriot Silo; Patriot Risk Services was part of the Patriot

Silo in 2013, and Patriot Claims Services moved from the Guaranty Silo to the Patriot Silo between 2013 and 2014. *Id.* Each of the Ullico/Patriot Service Providers are debtors in the chapter 11 cases.

On March 13, 2015, the Receiver filed the Petition to Compel Accounting and Turnover (A0043),[5] which included a demand for the accounting and turnover of over $26,000,000 of Ullico Collateral which GUI reported, as of March 12, 2013, was being held in connection with the Ullico/Patriot Program (the "Ullico Collateral"). (A0059-0060). The Receiver alleges that the Debtors transferred Ullico Collateral by moving it from the Guaranty Silo to the Patriot Silo, consistent with the movement of the Ullico/Patriot Service Providers, and that the Ullico/Patriot Service Providers, consistent with their insurance-services business roles, were likely to have possessed and controlled the Ullico Collateral.

The parties dispute whether a proper accounting has been provided. In response to discovery requests, Debtors provided some bank account statements for account 5225 titled "Patriot Risk Services, Inc. Ullico Casualty" (the "Patriot/Ullico Account") for the period January 1, 2012 through August 31, 2017 (A0485-0525). The Patriot/Ullico Account is designated as a "restricted account" by the Debtors. (*See* A0170 (identifying account 5225 as a "restricted account")). The Debtors' restricted accounts hold collateral in trust for the benefit of third parties. Debtors acknowledge that property held in restricted accounts (of which there were over two hundred as of the Petition Date) did not constitute property of the Debtors' bankruptcy estate and will not be transferred pursuant to the reorganization. (A0130-0131 at ¶ 8; A0901 at 92:13-24). According to the Receiver, the activity reflected in the Patriot/Ullico Account reflects

---

[5] C.A. No. 8392-VCS, D.I. 87 ("Petition to Compel Patriot Underwriters, Inc., Now Purportedly Known as Guarantee Underwriters, Inc., to File an Accounting with the Receiver and to Turnover Certain Collateral Held on Behalf of Ullico Casualty Company to the Receiver).

ongoing deposits and withdrawals of millions of dollars during the period when the Ullico/Patriot Program was active, and during the period immediately following entry of the Liquidation Order. (A0485). Debtors have argued that it was impossible that they had any involvement with Ullico because no Debtor existed at the time Ullico was placed into liquidation in 2013. The Receiver argues that this is contradicted by records and statements dating Debtors' origins back to 2003 and supporting an affiliation through common ownership. (*See* A0076). Even if the Debtors were correct, the Receiver asserts, this would not absolve the Debtors of their obligation to comply with the Liquidation Order and provide an accounting.

### D.   Confirmation Order

On April 2, 2018, the Receiver objected to the plan's discharge, injunction, and exculpation provisions on the basis that those provisions impair the Receiver's rights under the Liquidation Order and under DUILA in contravention of the McCarran Ferguson Act (A0706-0710) ("Plan Objection"). On April 12, 2018, the Receiver filed a motion seeking abstention and relief from the automatic stay (A0597) ("Abstention Motion"). At bottom, the relief sought by the Receiver was the insertion of "carve out" language stating that nothing in the plan would modify or restrict his rights. (A0941 at 132:17-24).

The Plan Objection and the Abstention Motion were heard in conjunction with the plan confirmation hearing on April 24, 2018. At the conclusion, the Bankruptcy Court rendered a decision on the record, overruling the Plan Objection and denying the Abstention Motion. (*See* A1065-1068, 256-259). The Bankruptcy Court declined to abstain, because, among other things, the PNI reorganization case "does not in any way invalidate the [Receiver's] authority" and because confirmation of the Plan was a "core proceeding to which mandatory abstention does not apply." (A1066 at 257:10-11; 257:20-21). The Bankruptcy Court ruled that "federal . . . bankruptcy issues . . . are involved," not "only state law issues." (A1067 at 258:6-7). Any state

7

proceedings, said the Bankruptcy Court, "simply do not afford an adequate opportunity to raise the federal claims." (*Id.* at 258:15-16). It further noted that a bankruptcy court "has exclusive jurisdiction to determine" the Receiver's asserted "property rights." (*Id.* at 258:21-22).

**E.    Jurisdiction Order**

At the conclusion of the plan confirmation hearing, the Bankruptcy Court requested supplemental letter briefs (A1118-1133) regarding the proposed exclusive jurisdiction provision contained in the plan, which provides in pertinent part:

> . . . the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:
> [ . . . ]
> 5. hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Litigation Claims or the Chapter 11 Cases . . . .

(D.I. 1-1, Art. X). On May 2, 2018, the Bankruptcy Court entered the Jurisdiction Order authorizing the Plan's exclusive jurisdiction provision. (D.I. 1-2 ¶ A). The Bankruptcy Court declined to "order in advance that it retains exclusive subject matter jurisdiction over claims and litigation not yet commenced[.]" (*Id.* ¶ B (citing *Zambelli Fireworks Mtg. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) ("[A] federal court always has jurisdiction to determine its jurisdiction."")). The Bankruptcy Court noted its inability "to assume jurisdiction it otherwise does not have[.]" (D.I. 1-2 ¶ B (citing *In re Resorts Int'l, Inc.,* 372 F. 3d 154, 161 (3d Cir. 2004) ("If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan . . . are fundamentally irrelevant.")). The Bankruptcy Court stressed that the plan's "retention of exclusive jurisdiction does not, at the moment, prejudice any party" and ordered that its "retention of jurisdiction is subject to objection" by any party. (D.I. 1-2). The Bankruptcy Court reasoned that the Receiver's jurisdictional challenge was "premature" because there was no pending "litigation" between the parties (D.I. 1-2 ¶ C). The Bankruptcy Court

8

would "address" a jurisdictional challenge "if litigation is commenced." The Jurisdiction Order

was entered on May 2, 2018, and the Confirmation Order was entered on May 4, 2018.

On May 16, 2018, the Receiver filed a timely notice of appeal with respect to both orders.

(D.I. 1). The appeal is now fully briefed. (D.I. 25, 37, 38, 39). The Court did not hear oral

argument because the facts and legal arguments are adequately presented in the briefs and

record, and the decisional process would not be significantly aided by oral argument.

## II.    JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction under 28 U.S.C. § 158(a)(1) over "final judgments, orders,

and decrees." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692-93 (2015) (bankruptcy court

order final, appealable if it "alters the status quo and fixes the rights and obligations of the

parties"; order confirming plan is "final"). Appellees argue that the portion of the Confirmation

Order denying the Abstention Motion was an interlocutory ruling, which may only be heard with

leave of the Court, which the Receiver failed to address in his opening brief. (D.I. 37 at 2-3). As

the Receiver correctly points out, however, the record reflects that the contested matters

comprising the Abstention Motion and Plan Objection presented related arguments focused on

the plan's impact on the Receiver's rights under DUILA and the Liquidation Order. The parties

and the Bankruptcy Court agreed that the Receiver's contested matters would be presented and

considered at the Confirmation Hearing as one contested matter, and these matters were

consolidated by oral order. (*See* A0830 at 21:9-13; A0927-28 at 118:22-119:1). Consolidation

of contested matters is consistent with Federal Rule of Civil Procedure 42 (applicable to

contested matters through Bankruptcy Rules 9014 and 7042). The Confirmation Order (which

includes the Bankruptcy Court's oral rulings) denied and overruled the Receiver's consolidated

Abstention Motion and Plan Objection, and it is a final determination of the contested matter,

appealable as of right in accordance with 28 U.S.C. § 158(a)(1).

9

This appeal seeks review of the Bankruptcy Court's legal conclusions regarding (i) the applicability of the McCarran-Ferguson Act and its preemption of the Bankruptcy Court's jurisdiction, (ii) the applicability of mandatory or permissive abstention, and (iii) the appropriateness of abstention pursuant to the *Younger* and *Burford* doctrines.  Where the appeal presents mixed questions of law and fact, I accept the Bankruptcy Court's finding of historical or narrative facts unless clearly erroneous, but exercise plenary review of the Bankruptcy Court's choice and interpretation of legal precepts and its application of those precepts to the historical facts. *In re SemCrude, L.P.*, 526 B.R. 556, 559 (D. Del. 2014).

## III.   ANALYSIS

While the Receiver raises several issues on appeal, the crux of his arguments is that the effect of the Jurisdiction Order and the Confirmation Order was to "eliminate the Receiver's ability to compel the Debtors' compliance with the Liquidation Order, denuding the Court of Chancery's jurisdiction and ability to exercise oversight of the Ullico estate and the assets composing same." (D.I. 25 at 27).  Specifically, the Receiver argues that the Court of Chancery should be the court to enforce its own Liquidation Order and determine consequences, if any, for violations of its provisions requiring the accounting and turnover of Ullico's collateral and enjoining actions detrimental to the Ullico estate.  Conversely, Appellees argue that the orders were properly entered, as the Bankruptcy Court has exclusive jurisdiction over the Debtors' property and the exercise of that jurisdiction does not impair DUILA.  Appellees further assert that the Receiver has never filed a proof of claim or initiated an adversary proceeding, so the Bankruptcy Court properly ruled that the Plan Objection was premature and declined to issue an advisory opinion.  Finally, Appellees assert, the Jurisdiction Order protects the Receiver's asserted rights.

In my view, the parties largely argue past each other.  Under the Liquidation Order, the Receiver has a right to the accounting.  The accounting serves a fundamental role in administering the liquidation of Ullico in accordance with DUILA.  To the extent that the Jurisdiction Order and Confirmation Order would preclude the Receiver from compelling the accounting, those orders would impair his rights under DUILA.  That is not my reading, however, of either the Jurisdiction Order or the Confirmation Order.  The Jurisdiction Order appears to preserve, rather than preclude, the Receiver's right to argue for enforcement of the Liquidation Order in "another forum," including, presumably, the Court of Chancery.  The Bankruptcy Court declined to "order in advance that it retains exclusive subject matter jurisdiction over claims and litigations not yet commenced."  (D.I. 1-2).  The Jurisdiction Order specifically notes, "Retention of jurisdiction provisions in plan of reorganization do not permit a bankruptcy court to assume jurisdiction it otherwise does not have."  (*Id.*).  Indeed, the Jurisdiction Order specifically provides that the Bankruptcy Court "will be able to address the substance of the [Plan Objections] if litigation is commenced and a party objects to the Court's jurisdiction."  (*Id.*)

To the extent that a claim or action for determination of ownership over the funds in the Debtors' restricted accounts is filed, however, Appellees are correct to argue that such a determination is within the Bankruptcy Court's subject matter jurisdiction and would not impair DUILA.  Case law is clear that the McCarran-Ferguson Act does not deprive a federal court of its valid jurisdiction, and that "a federal court's determination of rights to that property, without more, does not invalidate, impair or supersede state insurance law — even if the federal court later decides that the property never becomes property of the insurer's estate." *See In re Ames Dep't Stores, Inc.*, 542 B.R. 121, 151 (Bankr. S.D.N.Y. 2015).  As no such claim or action to determine ownership of funds in the restricted accounts was before the Bankruptcy Court at the

time of plan confirmation, however, the Bankruptcy Court correctly declined to make a premature ruling on the Plan Objection.  (D.I. 1-2 ¶ C).

### A.   The Bankruptcy Court Properly Exercised Jurisdiction in Confirming the Plan

The Receiver asserts that the Bankruptcy Court "err[ed] in exercising subject matter jurisdiction by confirming" the Plan because the Plan Injunction Provisions, including the retention of exclusive jurisdiction, impaired his rights.  (D.I. 25 at 2).  This contention ignores established federal bankruptcy jurisdiction.  *See In re Midstate Mortg. Inv'rs, Inc.*, 105 F. App'x 420, 421 (3d Cir. 2004) (rejecting jurisdictional challenge; "'[W]here there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan . . . retention of post-confirmation bankruptcy court jurisdiction is normally appropriate.'  That nexus existed here where the dispute focused on the content and meaning of the Plan, issues over which the bankruptcy court had properly retained jurisdiction.") (quoting *Resorts Int'l*, 372 F.3d at 168-69); *see also In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991) (bankruptcy court has "undisputed" jurisdiction to enforce own order).

Article X of the plan retains the Bankruptcy Court's jurisdiction over matters related to the recovery of property of the estate.  The Bankruptcy Court has exclusive jurisdiction over matters related to the determination of property of the Debtors' estates and has jurisdiction to determine what is property of the estate.  *See* 28 U.S.C. § 1334(e)(1); 28 U.S.C. §§ 157(b)(2)(A), (E) and (O).  In this case, the Receiver, admitting the litigation is "not yet commenced," intends to assert a "potential" claim to certain funds allegedly held in trust by PNI.  (D.I. 25 at 3).  In essence, the Receiver wants the Court of Chancery to determine ownership of property held by the Debtors instead of the Bankruptcy Court.  The ascertaining and marshalling of the Debtor's

estate is, however, a core function of the bankruptcy process over which Congress gave the

Bankruptcy Court "exclusive jurisdiction." The Receiver's "potential" claim "stems from the

bankruptcy itself," *Stern v. Marshall*, 564 U.S. 462, 499 (2011), and is within the Bankruptcy

Court's exclusive power to adjudicate.

According to the Receiver, as "the Debtors have confirmed on numerous occasions, the

property held in the Restricted Accounts is not part of the Debtors' estates." (A0130-0131 at ¶ 8;

A0901 at 92:20-23 (Debtors' counsel addressing the Bankruptcy Court " . . . we have

consistently taken the position . . . that funds held in restricted accounts do not belong to any

Patriot entity and are not and never were and never will be property of the estate."). The relief

the Receiver seeks has nothing to do with property of the Debtors' estate, he contends. Rather,

with respect to any potential claim, the Receiver asserts, "the only determination to be made

pertaining to property is whether certain property belongs to the Ullico Estate." (*Id.* at 32).

The Court finds this argument unavailing. "Various courts have concluded that matters

requiring a declaration of whether certain property comes within § 541's definition of 'property

of the estate' are core proceedings." *In re New Century Holdings, Inc.*, 387 B.R. 95, 105

(Bankr. D. Del. 2008). Here, the disputed funds are purportedly held in the Debtors' restricted

accounts. Even if the funds were held in trust, as the Debtors assert, it would still be within the

jurisdiction of the Bankruptcy Court to make the determination of whether property held by the

Debtors would come within § 541's definition of "property of the estate." And the Debtors

apparently do not concede that funds held by the Debtors are subject to turnover under the

Petition to Compel Accounting and Turnover. Thus, in the event of litigation brought by the

Receiver, ownership would still need to be determined. As the Bankruptcy Court noted at the

confirmation hearing, "whether it's estate property . . . or property that rightfully belongs to

Ullico . . . those are just flipsides of the same question. If it's not property of the estate, perhaps

it's property of Ullico.  If it's property of the estate, then it's not property of Ullico.  Isn't it the same . . . question, just in two different courts?"  (A0947).

In any event, the issue of jurisdiction is reserved for later determination if in fact litigation over the funds is commenced.  The Third Circuit has been very clear that retention of jurisdiction provisions in plans of reorganization cannot confer jurisdiction upon a bankruptcy court that it does not otherwise have.  *Resorts Int'l*, 372 F.3d at 161.  This proposition is clearly recognized in the Jurisdiction Order.  The retention of jurisdiction provision simply preserves, to the maximum extent possible, the Bankruptcy Court's jurisdiction over the matters listed in Article X.A of the plan.  In the course of any future litigation involving the Reorganized Debtors and the Receiver, the Receiver may still raise the issue of jurisdiction, and nothing in the plan or the Confirmation Order forecloses that right.  As set forth below, however, the question of whether to commence litigation is a decision the Receiver should not have to make until he receives the accounting.

## B.    The Bankruptcy Court Properly Found that the Plan Was Proposed in Good Faith

Following a lengthy evidentiary hearing with live testimony and documentary evidence, the Bankruptcy Court made the finding that the plan had been proposed in good faith, having "examined the totality of the circumstances surrounding the filing of the Chapter 11 cases, the Plan itself, and the process leading to the Plan's formulation."  (D.I. 1-1 at 18-19).  *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 246 (3d Cir. 2004) ("Although the Code does not define 'good faith' in the context of § 1129(a)(3), we have stated that '[f]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'") (quoting *In re PWS Holding Corp.,* 228 F.3d 224, 242 (3d Cir. 2000)).  A

bankruptcy court's "determinations of fact on good faith are reviewed for clear error[.]" *Combustion Eng'g.*, 391 F. at 246 n.67. A finding is clearly erroneous only when "the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

The Receiver offers no evidence of collusion, misconduct, or abuse of the bankruptcy process. (*See* D.I. 1-1 at 19 ("The facts and record, the Disclosure Statement, the record of the Confirmation Hearing [with live testimony], other proceedings held in the Chapter 11 Cases, and arm's-length negotiations among the Debtors and their key creditor constituencies provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of creditors and shareholders consistent with the overriding purpose of chapter 11, with the legitimate purpose of reorganizing, and consistent with applicable law.") (edited and cleaned up). The Receiver asserts that "the Plan violates § 1129(a)(3) because it has not been proposed in good faith and not by any means forbidden by law in that it violates the [McCarran-Ferguson Act] and the *Younger* and *Burford* abstention doctrines." (A0462-63; *see also* D.I. 25 at 47). Conversely, Appellees argue that the McCarran-Ferguson Act is inapplicable, and the Bankruptcy Court properly declined to abstain.

### 1. The McCarran-Ferguson Act Is Not Implicated by the Orders

Under the supremacy clause and rules of statutory construction, a federal statute would ordinarily preempt a state law insofar as the state law contravened the federal statute. *Ames,* 542 B.R. at 146 (citing *Stephens v. American Intern. Ins. Co.,* 66 F.3d 41, 43-44 (2d Cir. 1995)). In passing the McCarran-Ferguson Act, Congress created an exception to the standard preemption rules in certain instances involving state statutes regulating the insurance industry. The McCarran–Ferguson Act provides in relevant part: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the

business of insurance ... unless such Act specifically relates to the business of insurance." For this reason, when it applies, the McCarran–Ferguson Act is said to "reverse preempt" federal law. *Ames*, 542 B.R. at 146. In determining whether the Act "precludes application of a federal statute in face of state law," most courts consider whether (1) the state law was enacted "for the purpose of regulating the business of insurance," (2) the federal statute "does not specifically relate to the business of insurance," and (3) the federal statute would "invalidate, impair, or supersede the State's law." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (citation and quotation marks omitted); *In re MF Global Holdings Ltd.*, 469 B.R. 177, 194 n. 17 (Bankr. S.D.N.Y. 2012). The parties do not dispute that Bankruptcy Court properly concluded that the first two prongs were satisfied here. (A1065 at 256:14-17).

With respect to the third prong, whether plan confirmation would have invalidated, impaired, or superseded the state insurance insolvency laws, the Supreme Court has defined the terms "invalidate," "impair" and "supersede." *See Humana*, 525 U.S. at 307-10. "The term 'invalidate' ordinarily means 'to render ineffective, generally without providing a replacement rule or law.' And the term 'supersede' ordinarily means 'to displace (and thus render ineffective) while providing a substitute rule.'" *Id.* at 307 (citations omitted). The Supreme Court has applied the following test to determine whether a state's law was impaired: "When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." *Id.* at 310.

The Bankruptcy Court concluded that the third factor had not been satisfied because, in the event of litigation, "what the Court will be determining is property rights, interpretation of contracts, interpretation of state statutes, and that does not impair state law." (A1065 at 256:22-25). The Bankruptcy Court was further "satisfied that this bankruptcy proceeding does not in

16

any way invalidate the Ullico receiver's authority.  And Ullico may file a claim in this Court; it may commence an adversary proceeding if it believes that the debtors are in possession of  its property." (A1066).  The Receiver argues that the Bankruptcy Court erred in ruling that the third prong was not satisfied, as the plan "eliminates the Receiver's right to seek enforcement of the Accounting pursuant to the Liquidation Order" thereby invalidating and impairing his rights under DUILA  (D.I. 25 at 32).  Conversely, Appellees argue that the Bankruptcy Court has exclusive jurisdiction to determine issues of property ownership and that such exercise does not impair the Receiver's rights or frustrate any goal of DUILA.

The Court agrees with Appellees inasmuch as a long line of cases holds that a bankruptcy court's retention of, and potential exercise of, exclusive jurisdiction over determinations related to property of the estate does not support reverse preemption under the McCarran-Ferguson Act. *See, e.g., Ames,* 542 B.R. at 150 ("A federal court's determination of rights to [the property of an insolvent insurer], without more, does not invalidate, impair or supersede state insurance law — even if the federal court later decides that the property never becomes property of the insurer's estate"); *In re Agway, Inc.,* 357 B.R. 195, 203–04 (Bankr. N.D.N.Y. 2006) (bankruptcy court's jurisdiction over liquidator's claim against bankruptcy estate did not impair state insurance liquidation proceeding); *In re PRS Ins. Grp., Inc.,* 331 B.R. 580, 588 (Bankr. D. Del. 2005) (finding that an exercise of a bankruptcy court's exclusive jurisdiction does not interfere with a state insurance receivership or support reverse preemption under the McCarran-Ferguson Act); *In re Frontier Ins. Grp., LLC,* 517 B.R. 496, 506 (Bankr. S.D.N.Y. 2014) ("[A] federal court's ordinary determination of property rights, interpretation of contracts, or interpretation of state statutes does not 'impair' state law, even when a federal court's decision has a financial impact on the insolvent insurer's estate.").

Here, however, there is no pending proof of claim or proceeding for a determination of property rights. Nevertheless, Appellees' arguments faulting the Receiver for not having filed a proof of claim or initiated a proceeding puts the cart before the horse. The Receiver filed the Petition to Compel Accounting and Turnover under the authority of DUILA. Compliance with the accounting provision of the Liquidation Order is necessary to obtain information critical to the Receiver and the Court of Chancery's efforts to accomplish an effective, orderly liquidation of the Ullico estate. The accounting requirement is standard in every insurance company liquidation proceeding commenced in Delaware, and the information obtained through the accounting, and the related requirement to turn over assets identified by the accounting, serves a critical function in collecting and marshalling assets of an insolvent insurance company in an efficient manner to effectively administer the insurance liquidation estate consistent with both the provisions and the underlying purpose of DUILA. The question of whether to file a proof of claim or commence litigation against the Debtors carries financial and jurisdictional implications which are highly consequential in the context of an insurance liquidation. The Receiver should not have to make that decision in the absence of the accounting, nor should it have to file an adversary proceeding in order to obtain the accounting. The Court agrees with the Receiver that any order that would impair the Receiver's rights or ability to obtain an accounting would necessarily frustrate the purpose of DUILA.

That said, neither the Confirmation Order nor the Jurisdiction Order preclude the Receiver's rights to seek an accounting. The Receiver asserts that the Orders gave the Bankruptcy Court exclusive jurisdiction to adjudicate not-yet-commenced potential claims and litigation. (D.I. 25 at 3). In my view, the Receiver has misread the protective terms of the Jurisdiction Order. Recognizing the Receiver's concerns, the Bankruptcy Court declined to "order in advance" of any later litigation with the Receiver that it had jurisdiction. (D.I. 1-2 ¶ B).

18

Stressing that the Bankruptcy Court had no intention to "prejudice any party," it preserved the parties' right to challenge jurisdiction if and when litigation ensued, stressing that it would "address" the issue at the appropriate time. (*Id*. at 3). The Confirmation Order "shall contain language making it clear that that the Court's retention of jurisdiction is subject to objection by a party which believes … its rights to institute claims or litigation in other forums, is being infringed upon." (*Id*.) The Receiver does not address these provisions.

##### 2.      The Bankruptcy Court Properly Declined to Issue an Advisory Ruling

Absent a case or controversy, the Bankruptcy Court had no authority to issue the relief sought by the Receiver, and the Bankruptcy Court properly declined to issue an advisory opinion. The Plan Objection stemmed from the Receiver's concern that "[t]he Plan . . . through the discharge, injunction, release and exculpation provisions . . . prevent[s] the Receiver's authority to carry out his DUILA obligations by preventing the Receiver from pursuing ***possible*** claims and causes of actions to recover and administer Assets of Ullico Casualty." (A453-54 (emphasis added); *see* D.I. 25 at 54 ("Debtors have enjoined the Receiver's ability, through confirmation of the Plan and application of the Plan Injunction Provisions against the Receiver, to recover Ullico Collateral by pursuing ***potential*** causes of action . . .") (emphasis added)). The Receiver asked the Bankruptcy Court to "abstain from taking any action in these chapter 11 cases that ***may interfere*** with [his] ability to exercise his rights or fulfill his obligations in connection with the DUILA Insolvency Proceedings." (A599 (emphasis added)); A0941 at 132:11-17 (Receiver's counsel: "What we are asking Your Honor to do is to ensure that through confirmation of the plan, that Your Honor abstains from taking any action through that confirmation that will affect our rights to go [to] Chancery Court to enforce the liquidation order and claims against this estate for violations of the liquidation order").

Appellees argue that the Receiver never asserted claims against PNI in state court or elsewhere and therefore the Receiver effectively asked the Bankruptcy Court for an opinion concerning unasserted causes of action relating to purported trust funds.  (*See* A1068 at 258:20-21) (the Bankruptcy Court recognizing that the "Ullico receiver intends to pursue property claims").  The Receiver therefore failed to present a "legal controversy that is real and not hypothetical," or one that presently "affects" the Receiver "in a concrete manner."  *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly,* 815 F.2d 912, 915 (3d Cir. 1987).

*In re Cubic Energy, Inc.* is helpful.  In that case, certain parties sought "interpretation and enforcement of [the] provisions of the [debtors' reorganization plan] concerning the possible release, discharge, and injunction of claims and causes of action, particularly any claims against the [m]ovants."  The bankruptcy court held that the requested relief would constitute "an impermissible advisory opinion."  587 B.R. 849, 850-51 (Bankr. D. Del. 2018).  The movants in *Cubic Energy*, like the Receiver here, "[d]id not ask the Court to . . . prevent ongoing litigation, or force the parties to do something."  *Id.* at 856.  Rather, the requested relief turned on whether certain unasserted claims would "fall within certain exceptions to the [debtors' reorganization plan]," but the bankruptcy court found that "these exceptions may very well hinge on the nature of the claims brought . . . and the factual and legal grounds surrounding them"; accordingly, the bankruptcy court held that "to decide on the [requested relief] at this stage would be to indulge in appraising a hypothetical set of facts."  *Id.* at 857.  The Bankruptcy Court here faced the same

procedural posture.

### 3. The Bankruptcy Court Properly Determined Abstention Is Unwarranted

#### (a)    Mandatory abstention under 28 U.S.C. § 1334(c)(2)

Abstention is mandatory under 28 U.S.C. § 1334(c)(2) in "a proceeding based upon a

State law claim or State law cause of action, related to a case under title 11 but not arising under

title 11 or arising in a case under title 11 . . . if an action is commenced, and can be timely

adjudicated, in a State forum of appropriate jurisdiction." Mandatory abstention does not apply

to "core" proceedings, such as proceedings to enforce debtors' reorganization plans. *Midstate*

*Mortg.,* 105 F. App'x at 422 ("[T]he bankruptcy court [did not] err in refusing to abstain . . .

[when] the bankruptcy court considered arguments regarding Plan terms involving releases and

discharges, as well as the confirmation itself, making this a core proceeding."). The Receiver

argues, "The rights and actions most likely to be initiated by the Receiver — e.g., to compel an

accounting, and for turnover of identified property — are non-core proceedings." (A0613 ¶ 35).

These allegations, however, are objections to Plan confirmation. (A0609 ¶ 29 ("[T]he Receiver

seeks entry of an order . . . abstaining from taking any actions, through confirmation of the Plan

or otherwise, that will restrict or otherwise impede the Receiver's exercise of his rights or

fulfillment of his duties and obligations")). As Appellees correctly argue, the Receiver never

sought turnover or any other affirmative relief, and if he did, that request would have been a

"core" proceeding. 28 U.S.C. §§ 157 (b)(2)(A), (E).

Because plan "[c]onfirmation is a core proceeding to which mandatory abstention does

not apply," the Bankruptcy Court properly held that mandatory abstention was not required.

(A1066 at 257:18-23); *see Midstate Mortg*, 105 F. App'x at 422; 28 U.S.C. §§ 157(b)(2)(I), (J),

(L).

### (b)    Permissive abstention under 28 U.S.C. § 1334(c)(1)

Permissive abstention is left to a bankruptcy court's discretion "in the interest of justice,

or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1);

*see In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002).   Although courts evaluate twelve

factors when determining whether to abstain permissively, "three factors are given more weight

than the others: (1) the effect on the administration of the estate; (2) whether the claim involves

only state law issues; and ([3]) whether the proceeding is core or non-core." *In re Welded

Constr., L.P.*, 609 B.R. 101, 112 (Bankr. D. Del. 2019).

With respect to the first factor — the effect on the administration of the estate – the

Bankruptcy Court found that abstention would have vitiated plan confirmation and impaired the

administration of PNI's estate.  (A1065 at 256:20-21) ("First of all, if I do abstain, I'm basically

denying confirmation.  I think that's clear.")); *see also Welded Constr.*, 609 B.R. at 113 ("A

bankruptcy court has an inherent responsibility to exercise its jurisdiction to effectuate one of the

core features of the bankruptcy process itself[); *In re FAH Liquidating Corp.,* 567 B.R. 464, 472

(Bankr. D. Del. 2017) ("[S]eeking interpretation and enforcement of the Plan" weighs in favor of

not abstaining); *In re AstroPower Liquidating*, 335 B.R. 309, 330 (Bankr. D. Del. 2005)

(declining to abstain because the matter before the court was "intrinsically connected to the

Plan").  Because plan confirmation (or denial thereof) would have had a significant impact on the

administration of the estate, the first factor weighs in favor of denying abstention.

The second factor — "whether the claim involves only state law issues" — is relevant

because the Receiver asserted no claims; the only state law matter is the ongoing Delaware

insurance insolvency proceeding.  (D.I. 25 at 49) ("[T]he state court proceeding at issue —

broadly — is the DUILA Insolvency Proceeding").  The potential turnover claim articulated by

22

the Receiver is within the Bankruptcy Court's exclusive jurisdiction, as it will impact what is and is not property of the Bankruptcy Estate.

The third factor — whether the proceeding is core or non-core — also weighs in favor of denying of abstention. The Receiver's motion for abstention is related to Plan confirmation, a core proceeding. *See In re Venoco, LLC*, 596 B.R. 480, 493 (Bankr. D. Del. 2019) ("The Court has found that the adversary proceeding is core which therefore gives the advantage to Debtors. However, even if the adversary proceeding is non-core, the relationship to the Chapter 11 case is [of] such strength that the advantage remains with Debtors."). Moreover, the Receiver's potential claim for turnover is a core proceeding. 28 U.S.C. §§ 157 (b)(2)(A), (E). In light of the foregoing, the Bankruptcy Court properly exercised its "broad discretion" when it declined to abstain from assuming jurisdiction over plan confirmation. *Welded Constr.,* 609 B.R. at 112.

### (c)    Abstention under the *Younger* doctrine

The *Younger* doctrine provides that abstention may be appropriate when "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (originally delineating the three-part *Younger* test). But, "much has transpired since *Middlesex* was decided almost forty years ago." *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019). The Supreme Court, in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), "underscored that *Younger* abstention conflicts with federal courts' 'virtually unflagging' obligation to exercise their jurisdiction," and accordingly "narrowed *Younger*'s domain." *Malhan,* 938 F.3d at 462 (quoting *Sprint*, 571 U.S. at 77). The *Younger* analysis relied on by the Receiver is "no longer the test for *Younger* abstention." *Malhan*, 938 F.3d at 462; *see also Sprint,* 571 U.S. at 81.

23

The Supreme Court clarified that *Younger* abstention applies only to "three exceptional categories" of cases, one of which must be present before the *Middlesex* factors may be considered: (1) "ongoing state criminal prosecutions"; (2) "certain civil enforcement proceedings"; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial function." *Sprint*, 571 U.S. at 70 ("This Court has not applied *Younger* outside these three 'exceptional' categories, and rules . . . that they define *Younger*'s scope."); *Malhan*, 938 F.3d at 462 ("Only after a court finds that a proceeding fits one of those [three exceptional categories of cases] should it consider *Middlesex*'s additional factors.").

I agree with Appellees that DUILA does not fit the first category of criminal cases. Nor does it fit the second category of "civil enforcement proceedings," which relates to cases that "are akin to criminal prosecutions" or cases "initiated by the State in its sovereign capacity." *Sprint*, 571 U.S. at 70 (citation and quotation marks omitted). The third category relates to cases "that implicate a State's interest in enforcing the orders and judgments of its courts" (*e.g.,* civil contempt); but the Supreme Court stressed "that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not refuse to decide a case in deference to the States." *Sprint*, 571 U.S. at 72-73. The Third Circuit noted, "Orders of that type are very much 'unique.'" *Malhan*, 938 F.3d at 463. The Receiver's potential claim here — ownership of property in the Debtors' possession — inarguably falls within the scope of the Bankruptcy Court's jurisdiction. The Bankruptcy Court properly found that abstention under the *Younger* doctrine was not warranted.

### (d)   Abstention under the *Burford* doctrine

*Burford* requires a federal court to abstain from jurisdiction when assuming jurisdiction would be "disruptive of state efforts to establish a coherent policy with respect to a matter of

24

substantial public concern." *Colo. River Water Conservation Dist. v. United States*, 424 U.S.

800, 814 (1976). *Burford*, however, "does not require abstention whenever there exists [a

complex state administrative process], or even in all cases where there is a 'potential for conflict'

with state regulatory law or policy." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*,

491 U.S. 350, 362 (1989) (quoting *Colo. River*, 424 U.S. at 815-16). Instead, "*Burford*

represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a

controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996); *see*

*also PRS*, 331 B.R. at 589 ("Abstention is inappropriate in cases in which federal courts have

exclusive jurisdiction over at least a portion of the claims presented") (quoting *Chiropractic Am.*

*v. Lavecchia*, 180 F.3d 99, 108 (3d Cir. 1999)).

"[T]he regulation of insolvent insurance companies is surely an important state interest,"

but the "complex regulations relating to insolvent insurance companies" — which may mandate

*Burford* abstention — "have to do with [state court] plans of rehabilitation and payment to policy

holders"; conversely, "[s]imple contract and tort actions that happen to involve an insolvent

insurance company are not matters of important state regulatory concern or complex state

interests." *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 959, 960-61 (3d Cir. 1993)

("*Burford* abstention is inappropriate in this case because no important regulatory state interests

are involved in an ordinary action for monies allegedly due the plaintiff [the Pennsylvania

Insurance Commissioner].").

The Receiver's claim is within the Bankruptcy Court's jurisdiction to resolve pursuant to

28 U.S.C. § 1334(e)(1). (A1067 at 258:20-22) (Bankruptcy Court: "[H]ere, the Ullico receiver

intends to pursue property claims and the Court has exclusive jurisdiction to determine the

property rights of Ullico."). The Court agrees that the Receiver's unasserted claim therefore falls

outside the scope of the *Burford* doctrine, the "purpose" of which is to "avoid federal intrusion

into matters of local concern and which are within the special competence of local courts." *Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 303-04 (3d Cir. 2004). As Appellees correctly point out, while the outcome of a claim by the Receiver "may affect the amount of assets in the . . . liquidation proceeding . . . it will not directly impact the state's regulation of insurers or the state's ability to establish rules for the orderly rehabilitation or liquidation of insolvent insurers." *In re Reliance Grp. Holdings, Inc.*, 273 B.R. 374, 402-03 (Bankr. E.D. Pa. 2002) (*Burford* inapplicable); *Agway,* 357 B.R. at 205 (declining to abstain under *Burford* because "[t]here exist no difficult questions of state law, or a scintilla of evidence that this Court's ruling on the motion will disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern."). The Bankruptcy Court properly found that abstention under the *Burford* doctrine was not warranted**.**

IV.    **CONCLUSION**

The Bankruptcy Court did not exceed its subject matter jurisdiction by entering the Jurisdiction Order or the Confirmation Order. The McCarran-Ferguson Act does not apply and abstention was not warranted. The Court finds no basis to disturb the Bankruptcy Court's determination that the plan was proposed in good faith.

A separate order shall be entered.